## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| WANDA LYNN MARKLEY, | |
| Plaintiff, | No. C14-3063-LTS |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

_____

Plaintiff Wanda Markley seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Social Security Disability benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Markley contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    BACKGROUND

Markley was born in 1971, has a ninth grade education and past work as a cashier and fast food worker. AR 57, 75, 296. She filed her application on November 28, 2011, alleging an onset date of April 1, 2009. AR 74-87, 170-76. She contends that she is disabled due to hearing loss, lower back pain, degenerative shoulder disease, bipolar, high blood pressure, fibromyalgia and hypothyroid. AR 75-76. Markley's claim was denied originally and on reconsideration. AR 113-14, 115-24. She then requested a hearing before an Administrative Law Judge (ALJ). ALJ David G. Buell conducted a

hearing on July 8, 2013, at which Markley and a vocational expert (VE) testified. AR 29-73. On August 2, 2013, the ALJ issued a decision denying Markley's claim. AR 9-23. The Appeals Council denied Markley's request for review on September 19, 2014. AR 1-4, 5-8. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. § 404.981.

Markley filed a complaint (Doc. No. 3) in this Court on October 27, 2014, seeking review of the ALJ's decision. On February 2, 2015, with the consent of the parties (Doc. No. 13), the Honorable Mark W. Bennett transferred this case to me for final disposition and entry of judgment. The parties have briefed the issues and the matter is now fully submitted.

## II.    DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the

regulations. *Id.* § 404.1520; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and medical impairments. If the impairments are not severe, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if "it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a); *see also* 20 C.F.R. § 404.1520(c); *Kirby*, 500 F.3d at 707.

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* § 404.1521(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id*. § 404.1560(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. § 404.1545(a)(1). The RFC is based on all relevant medical and other evidence. *Id*. § 404.145(a)(3). The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 404.1520(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education and work experience. *Id*. §§ 404.1512(f), 404.1520(a)(4)(v). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id*. § 404.145(a)(3). The burden of

persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. § 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. § 404.1535.

### III. THE ALJ'S FINDINGS

The ALJ made the following findings:

(1) The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

(2) The claimant has not engaged in substantial gainful activity since April 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).

(3) The claimant has the following severe impairments: Fibromyalgia, Degenerative Joint Disease, Degenerative Disc Disease, Bipolar Disorder/ Depression, Hearing Loss, and Anxiety Disorder (20 CFR 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that only occasionally should the claimant stoop, crouch, kneel,

or crawl. She cannot climb ladders, ropes or scaffolds. She is required to work in an environment with quiet ambient sound. She needs [sic] not communicate with anyone (occupational tasks assigned to be performed without interaction with the public). She is able to do most simple routine and repetitive work with no close attention to detail, and no use of independent judgment. Lastly, the claimant will need to stand up and change positions from standing to sitting, to shift her weight around while standing for 1 minutes [sic] every 30 minutes of the wore [sic] day. She is able to remain near the workstation during that one-minute stretching and will not be productive/doing tasks during that time.

(6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7)    The claimant was born on July 22, 1971 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

(8)    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11)   The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision (20 CFR 404-1520(g)).

AR 12-23.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188

(8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.     DISCUSSION

Markley contends the ALJ's decision is not supported by substantial evidence because (1) the ALJ failed to weigh the medical opinion evidence properly and (2) the ALJ's hypothetical question to the VE did not include all of her mental impairments. I will address these arguments separately.

### A.     *The Medical Opinion Evidence*

#### 1.     *Applicable Standards*

The Social Security regulations state, in relevant part:

> Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2) [emphasis added]. What this means is that a treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). But that opinion will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. *Hacker*, 459 F.3d at 937.

When a treating physician's opinion is entitled to controlling weight, the ALJ must defer to the physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions. 20 C.F.R. § 404.1527(a)(2); *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005). The ALJ must "always give good reasons" for the weight given to a treating physician's evaluation." 20 C.F.R § 404.1527(d)(2); *see also Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007). A treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis*, 392 F.3d at 994.

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are

defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Other relevant evidence includes medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Some medical evidence 'must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a state agency medical . . . consultant." 20 C.F.R. § 404.1527(e)(2)(ii).

### 2.     *Treating source opinions*

The record contains opinion evidence from treating sources at Berryhill Center for Mental Health (Berryhill) and Wright Medical Center (Wright), a family practice facility.

#### a.     *Dr. Lozano Celis*

Maria Lozano Celis, M.D., a psychiatrist, began treating Markley on November 1, 2012. AR 434-37. Prior to seeing Dr. Lozano Celis, Markley was treated at Berryhill by Mike Corsberg, P.A., beginning as early as June of 2008. AR 405, 434. Dr. Lozano Celis saw Markley on three occasions over a four-month period for 45, 30 and 20 minute sessions. AR 434-37, 438-39, 441-42. Dr. Lozano Celis found that Markley had normal psychomotor activity and depressed mood but was able to smile and laugh on occasion. AR 436, 441. Dr. Lozano Celis also reported that Markley had a goal-directed thought process, no evidence of obsession or delusion, no suicidal intention, normal psychomotor

activity, that she was oriented to time and place, had no perceptual disturbances, normal attention and concentration, normal intelligence, good insight and judgment and no evidence of psychosis. AR 436, 438. On November 1, 2012, Dr. Lozano Celis assigned Markley a Global Assessment of Functioning (GAF) score of 55.[1] AR 437. During her second examination of Markley, Dr. Lozano Celis noted that her mood was very sad and angry and that she was dysphoric, but was able to calm down toward the end of the meeting. AR 438.

Dr. Lozano Celis completed a mental RFC questionnaire on June 24, 2013. AR 444. She reported diagnoses of bipolar II disorder, general anxiety disorder, hypothyroidism, fibromyalgia, substance abuse in remission, financial, health and relationship stressors and assigned a current GAF score of 50.[2] *Id.* Additionally, Dr. Lozano Celis opined that Markley was depressed, anxious and easily overwhelmed by daily activities, but with no suicidal ideation or psychosis. *Id.* Dr. Lozano Celis also indicated that Markley had intense and unstable interpersonal relationships and impulsive and damaging behavior, persistent disturbances of mood or affect and difficulty thinking or concentrating. AR 445-46. Dr. Lozano Celis opined that Markley was unable to meet competitive standards in (1) completing a normal workday and workweek without interruptions from psychologically based symptoms, (2) responding appropriately to changes in a routine work setting and (3) dealing with normal work stress. Additionally

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school, or occupational settings, not including impairments due to physical or environmental limitations. *See* American Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM-IV). A GAF score of 51-60 indicates the individual has moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

[2] A GAF score of 41 to 50 indicates the individual has serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) or a serious impairment in social, occupational or school functioning (*e.g.*, no friends, unable to keep a job). DSM-IV at 34.

Dr. Lozano Celis found Markley to be seriously limited, but not precluded, in (1) maintaining attention for two hours, (2) maintaining regular attendance and being punctual within customary, usually strict, tolerance, (3) sustaining an ordinary routine without special supervision, (4) working in coordination with or proximity to others without being unduly distracted, (5) performing at a consistent pace without an unreasonable number and length of rest periods, (6) accepting instructions and responding appropriately to criticism from supervisors and (7) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 446-47. Dr. Lozano Celis also indicated that Markley was unable to meet competitive standards when it came to interacting appropriately with the general public and maintaining socially appropriate behavior. AR 448. Dr. Lozano Celis opined that these impairments would cause more than four absences per month and would be expected to last at least twelve months. AR 450.

### b. Dr. Nagel

Timothy Nagel, M.D., a family practitioner, began seeing Markley on February 19, 2010, for treatment of hypothyroidism, hearing, back pain, anxiety/depression and various general wellness complaints. AR 306, 307, 309-10, 312-13, 453. On January 31, 2012, Dr. Nagel wrote a letter in which he noted that Markley had a history of anxiety, depression, bipolar disorder, hypothyroidism, hypertension and fibromyalgia. AR 406. He opined that following recovery from an arthroscopic procedure for left shoulder pain, Markley would be able to lift and carry up to 25 pounds and would have no restrictions regarding standing, sitting, walking, stooping, climbing, kneeling and crawling. *Id.* With regard to Markley's mental health condition, Dr. Nagel wrote that she appeared to be stable and should be able to "recommend and understand instructions, procedures and locations," and to "carry out instructions, maintain attention and concentrate." *Id.* Dr. Nagel reported that Markley would be able to interact

appropriately with supervisors, co-workers and the public and, with proper supervision, would be able to use good judgment and respond appropriately. *Id.*

### 3. *State agency psychologists*

Markley's records were reviewed by state agency consulting psychologists Scott Schaffer, Ph.D., and Myrna Tashner, Ed.D. Dr. Schaffer prepared a mental RFC assessment dated February 21, 2012. AR 83-85. He found that Markley was not significantly limited with regard to understanding and memory with the exception that she was moderately limited in understanding and remembering detailed instructions. AR 83. Additionally, Dr. Schaffer found moderate limitations with regard to Markley's ability to (a) carry out detailed instructions, (b) maintain attention and concentration for extended periods, (c) accept instructions and respond appropriately to criticism from supervisors, (d) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. AR 83-84. Dr. Schaffer found that Markley's mental impairment allegations were credible, but that she was able to perform routine tasks not requiring sustained attention or extensive contact with others. AR 85.

Dr. Tashner prepared a mental RFC assessment dated April 26, 2012. AR 97-100. She found the same moderate limitations as Dr. Schaffer. *Id.* Dr. Tashner also found that Markley had a severe mental impairment that did not meet or equal a listing. AR 99. She opined that Markley's mental impairment allegations, while credible, did not prevent her from performing routine tasks not requiring sustained attention or extensive contact with others. *Id.*

Based on the dates of the state agency psychologists' assessments, it is clear that neither had the opportunity to review the treatment notes and mental RFC assessment prepared by Dr. Lozano Celis. AR 83-85, 97-100.

### 4. The ALJ's reasoning

The ALJ gave little weight to Dr. Lozano Celis' opinion as to Markley's ability to meet competitive standards regarding social interactions, noting that Markley retained a cashier position at McDonald's for three years. AR 20. The ALJ found that if Markley was as limited as Dr. Lozano Celis portrayed, it was unlikely that she would have been able to retain employment for that long. *Id*. Additionally, the ALJ discounted Dr. Lozano Celis' opinion that Markley would not be able to maintain attention for two hours because Markley worked shifts longer than two hours while employed at McDonald's. *Id*. The ALJ also discredited Dr. Lozano Celis' opinion that Markley was unable to meet competitive standards in responding appropriately to changes in a routine work setting because none of her treatment observations suggested such limitations. AR 20-21. Finally, the ALJ stated that Dr. Lozano relied heavily on Markley's subjective reports of symptoms and limitations and accepted the information as true without a critical examination. AR 21.

In summarizing the medical evidence of record, the ALJ observed that Markley's symptoms improved with medication and there appeared to be no evidence of suicidal or homicidal ideation or psychosis during her treatment at Berryhill. AR 16. The ALJ noted that Markley was assigned a GAF score of 55 in June 2012 and that various treatment notes showed she had normal psychomotor activity, a goal-directed thought process, was able to smile and laugh on occasion, had good insight and judgment, was cooperative and exhibited no signs of psychosis. AR 19.

The ALJ stated that Markley's reported daily activities were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. AR 19-20. The ALJ noted that Markley had no significant problems with personal care, preparing meals, housework, getting around town on her own, handling shopping responsibilities and financial matters and that she was able to care for her young daughter. AR 20.

14

The ALJ observed that Markley has not required hospitalization or intensive long-term treatment for any of her conditions. *Id*. The ALJ also noted that the record contained no opinions from any treating or examining physician other than Dr. Lozano Celis suggesting limitations beyond those he included in the RFC. AR 21. The ALJ concluded that the other medical opinions of record were consistent with the record as a whole and were therefore entitled to great weight. *Id*. The ALJ stated that any deviations from his RFC findings and the opinions of the state agency consultants arose from (a) the ALJ's decision to give Markley's subjective allegations the benefit of the doubt and (b) the fact that the record contained evidence that the state agency consultants did not have the opportunity to review. *Id*.

## 5. *Analysis*

Markley argues that the ALJ should have given controlling weight to the opinion of Dr. Lozano Celis. She contends that ALJ improperly used information pertaining to Markley's part-time employment at McDonald's to discount Dr. Lozano Celis' opinion. The Commissioner argues the ALJ properly evaluated the opinion evidence and used the proper framework to evaluate Dr. Lozano Celis' opinion. The Commissioner contends that the ALJ was entitled to discredit Dr. Lozano Celis' opinion in light of the length of treatment relationship, the degree of supporting evidence, consistency with the record as a whole and internal inconsistencies.

I agree with the Commissioner and find that the ALJ appropriately weighed the opinion evidence in determining Markley's RFC. A treating source's opinion may be discounted if it is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the case record. *Hacker*, 459 F.3d at 937. If a treating source opinion is not entitled to controlling weight, the regulations require an ALJ to evaluate the opinion by considering (1) the length of the treatment relationship; (2) the nature and extent of the treatment relationship; (3) the

quantity of evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the treating physician is also a specialist. 20 C.F.R. § 404.1527(d). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Davidson*, 501 F.3d at 990 (internal quotations and citation omitted)).

Dr. Lozano Celis' treatment relationship with Markley consisted of three appointments between November 2012 and March 2013. Dr. Lozano Celis then completed the mental RFC questionnaire on June 24, 2013. The ALJ found that this short treatment relationship weighed against giving controlling weight to Dr. Lozano Celis' opinion. This was a proper consideration. 20 C.F.R. § 404.1527(d); *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) ("When deciding 'how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.'") (quoting *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) (in turn quoting *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007)).

The ALJ also relied on Markley's part-time work to discredit Dr. Lozano Celis' opinion. Specifically, the ALJ cited Markley's statement that she works four-to-five hour shifts as contradicting Dr. Lozano Celis' findings. AR 20, 231. "[W]hether a claimant has the residual functional capacity necessary to be able to work we look to whether [she] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Boettcher v. Astrue*, 652 F.3d 860, 866 (8th Cir. 2011) (internal citations omitted). Part-time work is an appropriate factor for the ALJ to consider when assessing the claimant's RFC. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Here, to her credit, Markley maintained a part-time job for three years. While this did not qualify as "substantial gainful activity," 20 C.F.R. § 404.1571, "[w]orking generally

16

demonstrates the ability to perform substantial gainful activity." *Goff*, 421 F.3d at 792 (citing *Naber v. Shalala*, 22 F.3d 186, 188–89 (8th Cir. 1994)). Here, the ALJ was entitled to discredit Dr. Lozano Celis' opinion on grounds that it was inconsistent with Markley's documented ability to maintain part-time employment.[3]

The Commissioner also argues that the ALJ was correct in finding that Dr. Lozano Celis' opinion was inconsistent with her own treatment notes. For example, on November 1, 2012, Dr. Lozano Celis reported that Markley's attention and concentration were within normal limits. AR 436. However, in the mental RFC assessment, Dr. Lozano Celis indicated that Markley was seriously limited in maintaining concentration for two hours. None of Dr. Lozano Celis' intervening treatment notes explain this rather-drastic revision. The ALJ may discount a treating physician's opinion when it is inconsistent with the physician's own, relatively mild examination findings. *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005).

The ALJ also noted that both of the state agency consulting psychologists concluded that Markley's mental impairments were only moderate. AR 21. While neither psychologist had the benefit of Dr. Lozano Celis' subsequent treatment notes and opinion, there appears to be no dispute that they had access to Markley's previous

---

[3] Markley argues that the record contains evidence – specifically her own testimony – indicating that she had to miss work and leave work early due to her impairments. AR 54. While Markley suggests that no evidence contradicts this allegation, the record contains a work evaluation completed by Markley's supervisor at McDonald's rating her performance as good or excellent in all categories. AR 256-57. The evaluation indicates that the employer gave no special considerations to Markley as compared to other workers with the same job title. AR 257. In answering a question as to whether there were any additional limitations to competitive full-time work the supervisor wrote: "None – medical leave." *Id.* This answer is ambiguous and, perhaps, internally inconsistent. As a whole, however, the evaluation lends support to the ALJ's conclusion that Markley's record of successful part-time work is inconsistent with the serious limitations described in Dr. Lozano Celis' opinion.

records, including those reflecting her treatment at Berryhill. The ALJ afforded great weight to the consulting psychologists' opinions, finding that they were consistent with each other and with the evidence as a whole. *Id.* While opinions of non-examining sources do not constitute substantial evidence, *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003), an ALJ does not commit reversible error when he or she undertakes an independent review of the medical evidence and does not rely solely on the opinion of a non-examining source in determining a claimant's RFC. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Here, I find that the ALJ properly considered the entire record in determining that the consulting psychologists' opinions were entitled to great weight.[4]

In short, I find that the ALJ appropriately weighed the medical evidence and gave good reasons for affording only little weight to the opinion of Dr. Lozano Celis. As such, I conclude that the ALJ's findings as to Markley's RFC are supported by substantial evidence.

## B.     *Hypothetical Question to VE*

Markley argues that the ALJ did not include all of her limitations when posing a hypothetical question to the VE, but acknowledges that this argument is moot if I find the ALJ's evaluation of the opinion evidence is supported by substantial evidence. Doc. No. 15 at 11.     As that is the case, there is no need to address this argument.

---

[4] In discrediting Dr. Lozano Celis' opinion, the ALJ did not directly contrast it with the opinion provided by Dr. Nagle, Markley's family physician, who reported that Markley had stable mental health issues and should be able to understand instructions, maintain attention, carry out instructions and interact with co-workers and customers appropriately. AR 20-21, 406. "Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist." Brown, 611 F.3d at 953 (internal citations omitted). Thus, it would have been questionable, at best, for the ALJ to rely on Dr. Nagle's opinion to reject that of Dr. Lozano Celis. Instead, as set forth above, the ALJ provided other reasons for giving little weight to Dr. Lozano Celis' opinion.

## VI.    CONCLUSION

For the reasons set forth herein, I conclude that the Commissioner's determination that Markley was not disabled within the meaning of the Act is supported by substantial evidence in the record.  Accordingly, the final decision of the Commissioner is **affirmed**. Judgment shall enter against Markley and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 11th day of February, 2016.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE